Ray H. PEACE

v.

**EASY TRUCKING COMPANY.**

Supreme Court of Tennessee,
at Knoxville.

Feb. 6, 2001.

James T. Shea, IV, Knoxville, TN, for the appellant, Easy Trucking Company.

Clifford C. Cruze and Frank Q. Vettori, Knoxville, TN, for appellee, Ray H. Peace.

**OPINION**

BIRCH, J., delivered the opinion of the court, in which ANDERSON, C.J., DROWOTA and HOLDER, JJ, joined. BARKER, J., not participating.

We are asked in this case to determine whether awards of permanent partial dis-

ability to the body as a whole for employees over age 60 should be calculated as a percentage of 400 weeks, with a "cap" at 260 weeks, or whether such awards should be calculated as a percentage of 260 weeks. After thorough consideration of the entire record and the relevant authorities, we hold that permanent partial disability awards are properly calculated at 400 weeks, with a "cap" at 260 weeks for employees over age 60. In addition, the defendant contends that the trial court erred in granting the plaintiff an award pursuant to Tenn.Code Ann. § 50–6–242 (1999) rather than applying the "multiplier" provision of Tenn.Code Ann. § 50–6–241(b) (1999) to limit the plaintiff's awards to six times his medical impairment rating. Because we find that Tenn.Code Ann. § 50–6–242 allows trial courts to make an award in excess of the "multiplier" provision only if the statute's requirements are supported by clear and convincing evidence, we remand the cause to the trial court so that it may document such clear and convincing evidence as may support an award in excess of the "multiplier" provision.

## I.  Facts and Procedural History

On February 22, 1995, Ray H. Peace, the plaintiff, was working as a truck driver for Easy Trucking Company (Easy Trucking), the defendant, when he felt a "popping" in his right shoulder while lifting the hood of his truck.[1] Immediately thereafter, Peace began to experience pain in his shoulder which intensified over time. He sought medical attention for his injury and was treated by Brian M. Covino, M.D., who diagnosed him as having a massive tear of his rotator cuff. He underwent surgery to repair the tear, received therapy for five to six months, and was then released to return to work. Covino as-

signed Peace a 12 percent anatomical impairment rating to the upper extremity, or 7 percent to the body as a whole, and restricted him to lifting 5 pounds with his right arm. Peace told Easy Trucking of his restrictions and was told he would be contacted about resuming employment, but he heard nothing else from the company.

At trial, Peace presented a Tennessee Department of Labor Standard Form Medical Report completed by Covino as evidence of his injury and impairment. In addition, he presented the deposition of vocational consultant Michael T. Galloway, M.S., who testified that he had interviewed and tested Peace and had determined that he could perform jobs in approximately 500 categories. Galloway, however, testified that Peace would not have reasonable access to any job opportunity locally in the absence of special accommodations by an employer, and thus he opined that Peace was permanently and totally disabled.

Easy Trucking, on the other hand, presented the testimony of vocational consultant Jane Colvin Roberson, M.S., who stated that Peace would have access to jobs in approximately 1,000 categories, including security work, parking lot work, escort driving, and rental car delivery. She did not, however, identify any such jobs as available in the area in which Peace resided. She estimated that his vocational disability was "well under 20 percent."

The trial court found that Peace was 66 years old, could neither read nor write proficiently, had no reasonably transferable skills, and had no reasonable job opportunities in the area. Based on these findings, the court decided that Peace was entitled to an award exceeding the "multiplier" normally imposed by Tenn.Code Ann. § 50–6–241 (1999)[2] and granted him

---

1. At the time of his injury, Peace was 63 years old with an eighth-grade education, and he had been employed as an over-the-road truck driver for approximately 27 years. In addition to the injury at issue in the pending case, Peace suffered from degenerative osteoarthritis in both knees.

2. The "multiplier" provision of Tenn.Code Ann. § 50–6–241 limits awards for permanent partial disability to the body as a whole to six times the employee's medical impairment rating. Tenn.Code Ann. § 50–6–241(b) (1999). However, Tenn.Code Ann. § 50–6–242 provides that the trial judge may grant an award

260 weeks of benefits under Tenn.Code Ann. § 50–6–242. The court, however, neither assigned a specific vocational disability percentage to Peace nor listed the specific evidence upon which it based its conclusion that Peace was entitled to an award exceeding the multiplier provision. Easy Trucking appealed, contending that the trial court erred in: (1) holding, in the absence of specific, documented findings of fact, that Peace had no reasonable employment opportunities or transferable job skills and (2) failing to calculate Peace's award based on a percentage of 260 weeks rather than 400 weeks. The Special Workers' Compensation Appeals Panel affirmed the trial court's ruling that benefits should be calculated on the basis of a percentage of 400 weeks but remanded the case with instructions that the trial court should make specific and documented findings, supported by clear and convincing evidence, that Peace met the requirements of Tenn.Code Ann. § 50–6–242 and was entitled to an award exceeding the "cap" imposed by Tenn.Code Ann. § 50–6–241.

■ We granted Easy Trucking's motion for review by the entire Supreme Court pursuant to Tenn.Code Ann. § 50–6–225(e)(5)(B) (1999). We agree with the trial court's conclusion that permanent partial disability benefits for employees over age 60 should be calculated as a percentage of 400 weeks, "capped" at 260 weeks, rather than as a percentage of 260 weeks. The trial court's award of benefits, however, in excess of the multiplier provision of Tenn.Code Ann. § 50–6–241, must be supported by specific evidentiary findings. Accordingly, we remand the cause

exceeding the "caps" imposed by the multiplier provision if:

> on the date of maximum medical improvement, [the court makes] a specific documented finding, supported by clear and convincing evidence, of at least three (3) of the following four (4) items:
> (1) The employee lacks a high school diploma or general equivalency diploma or the employee cannot read or write on a grade eight (8) level;

to the trial court for the entry of such findings.

## II. Standard of Review

■ In workers' compensation cases, we review the trial court's findings de novo upon the record accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e)(2) (1999); *Spencer v. Towson Moving and Storage Inc.*, 922 S.W.2d 508, 509 (Tenn.1996). Questions of law, on the other hand, are reviewed de novo without a presumption of correctness. *Smith v. U.S. Pipe & Foundry Co.*, 14 S.W.3d 739, 742 (Tenn.2000).

■ When construing a statute under the de novo standard, "[t]he most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn.1995). The legislature has stated that the Workers' Compensation Act "is declared to be a remedial statute which shall be given an equitable construction by the courts, to the end that the objects and purposes of this chapter may be realized and attained." Tenn.Code Ann. § 50–6–116 (1999). Therefore, we construe workers' compensation statutes "rationally but liberally ... to promote and adhere to the Act's purposes of securing benefits to those workers who fall within its coverage." *Lindsey v. Smith & Johnson, Inc.*, 601 S.W.2d 923, 926 (Tenn. 1980).

> (2) The employee is fifty-five (55) years of age or older;
> (3) The employee has no reasonably transferable job skills from prior vocational background and training; and
> (4) The employee has no reasonable employment opportunities available locally considering the employee's permanent medical condition.
> *Id.* § 50–6–242.

## III. Discussion

### A. Calculation of Benefits

Our primary task in this case is to determine whether trial courts should calculate permanent partial disability awards for employees over age 60 as a percentage of 260 or 400 weeks. Easy Trucking asserts that a rational interpretation of the Workers' Compensation Act compels that such awards be calculated as a percentage of 260 weeks. Peace, on the other hand, contends that the awards should be calculated as a percentage of 400 weeks, with the benefit award to be "capped" at 260 weeks. We conclude that the proper basis is 400 weeks with a "cap" at 260 weeks.

Normally, benefits for permanent partial disability to the body as a whole are calculated pursuant to Tenn.Code Ann. § 50–6–207(3)(F) (1999), which provides that injuries not covered by the compensation schedule of that statute "shall be apportioned to the body as a whole, which shall have a value of four hundred (400) weeks, and there shall be paid compensation to the injured employee for the proportionate loss of use of the body as a whole resulting from the injury." When an employee is permanently and totally disabled, on the other hand, benefits are calculated pursuant to Tenn.Code Ann. § 50–6–207(4)(A)(i) (1999), which provides in pertinent part:

> [C]ompensation shall be paid during the period of the permanent total disability until the employee reaches sixty-five (65) years of age; provided, that with respect to disabilities resulting from injuries which occur after 60 years of age, regardless of the age of the employee, permanent total disability benefits are payable for a period of two hundred sixty (260) weeks.

Thus, the statute provides that permanently and totally disabled employees over age 60 may receive a full five years (260

weeks) of benefits without regard to the "cutoff" at age 65 which otherwise would apply.

A conflict arises, however, between the statutory sections governing permanent partial and permanent total disability when the employee is age 60 or older. In *Vogel v. Wells Fargo Guard Services,* we noted that a partially disabled employee over age 60 in some cases could receive more in benefits than a totally disabled employee of the same age because permanent partial disability benefits are calculated on a basis of 400 weeks rather than 260 weeks. 937 S.W.2d 856, 861–62 (Tenn.1996). We concluded that this statutory conflict "creates a result which, described in its best light, is odd." *Id.* Because we found that the statute created an irrational distinction between partially disabled and totally disabled employees, we held that "[i]n order to lend some rationality to the compensation scheme, we conclude that the 260 week cap set forth in Tennessee Code Annotated Section 50–6–207(4)(A)(i) applies to all injured workers over sixty who are awarded benefits under the Workers' Compensation statute for permanent partial or permanent total disability." *Id.* at 862. In so doing, we recognized that our conclusion "militate[d] against injured workers in some context notwithstanding the remedial purpose of the Act." *Id.* Nonetheless, we resolved that our holding was "required to avoid an otherwise irrational result." *Id.*

In *McIlvain v. Russell Stover Candies, Inc.,* however, we declined to extend the rationale of *Vogel.* 996 S.W.2d 179, 185 (Tenn.1999). Though we acknowledged in *McIlvain* that benefits for a scheduled member injury to an employee over age 60 may sometimes exceed the 260 weeks of benefits allowable for permanent and total disability, we nonetheless held that the 260–week "cap" [3] established by *Vogel* does

---

**3.** As we recently recognized in *Tucker v. Foamex, L.P.,* reference to the 260 week provision of Tenn.Code Ann. § 50–6–207(4)(A)(i) as a "cap" is somewhat of a misnomer. 31 S.W.3d

241, n. 3 (Tenn.2000). Under Tenn.Code Ann. § 50–6–207(4)(A)(i), permanently and totally disabled employees usually receive benefits to age 65. However, the 260 week

not apply to scheduled member injuries because such injuries are " 'exclusively controlled by the impairment rating established by the General Assembly for that member.' " *Id.* at 185 (quoting *Reagan v. Tennessee Mun. League,* 751 S.W.2d 842, 843 (Tenn.1988)).

Similarly, in *Tucker v. Foamex, L.P.,* we considered whether the age–65 limitation of Tenn.Code Ann. § 50–6–207(4)(A)(i) should apply when an employee who is not over age 60, but who is within 400 weeks of his or her sixty-fifth birthday, sustains a permanent partial disability. 31 S.W.3d 241 (Tenn.2000). Although we recognized that "under our holding some employees could receive a larger award for a permanent partial disability to the body as a whole than they would receive if they were found permanently totally disabled," we declined to apply the rationale of *Vogel* and limit employees' benefits because "to do so effectively would require us to re-write the statute and would substantially limit, without clear statutory authority, benefits to many partially disabled workers between the ages of 58 and 60." *Id.* at 245. Thus, while we have continued to apply the 260–week provision of Tenn. Code Ann. § 50–6–207(4)(A)(i) to employees over age 60 who have permanent partial disabilities, we have been ever mindful that it is not our province to create new statutes or modify existing ones. Nor is our power to correct inconsistencies in the plain language of the Workers' Compensation Act unlimited. *See Vogel,* 937 S.W.2d at 862; *McIlvain,* 996 S.W.2d at 185.

Here, Easy Trucking contends that under the logic of *Vogel,* permanent partial disability benefits must be calculated as a percentage of 260 weeks rather than as a percentage of 400 weeks "capped" at 260 weeks. If benefits are based on 400 weeks "capped" at 260 weeks, then any partially disabled employee over age 60 who is 65 percent or more disabled will receive the same amount in benefits as a permanently and totally disabled employee.[4] Easy Trucking contends that this is the type of "irrational result" that we sought to correct in *Vogel* and that the percentage of disability should be based on 260 weeks so that injured employees are compensated in proportion to their disability.

We find this contention unpersuasive. In *Vogel,* our concern was that the permanent partial and permanent total disability statutes differentiated between persons by causing totally disabled employees over age 60 to receive less in benefits than partially disabled employees of the same age. *See Vogel,* 937 S.W.2d at 862. However, if awards are "capped" so that partial disability awards cannot exceed total disability awards, this irrational result does not arise. While basing permanent partial disability awards on a percentage of 260 rather than 400 weeks also avoids this result, such an approach has an added disadvantage. If a 260 week basis is applied, benefits are reduced even for those employees whose award would not otherwise have exceeded 260 weeks.[5] Thus, our decision would adversely affect employees whose benefit awards would not have exceeded an award for permanent total dis-

provision abrogates the age–65 "cutoff" for employees over the age of 60. Thus, for example, an employee who is permanently and totally disabled at age 64 would receive a full five years (260 weeks) of benefits rather than having benefits terminated in 52 weeks by the statutory age–65 limitation. Therefore, the 260–week provision originally operated only to extend benefits; the provision operates as a "cap" only when applied to permanent partial disability awards following *Vogel.*

4. Sixty-five percent multiplied by 400 weeks equals 260 weeks.

5. For example, if a 260–week basis were used, a 60 year-old, 50–percent disabled employee would receive 130 weeks of benefits, whereas under a 400 week basis the same employee would have received 200 weeks in benefits. Thus, if we were to apply a 260–week basis, the employee's period of benefits would be reduced by ov~ ~ year despite the fact that the award wou~~ have fallen short of exceeding 260 weeks even if it had been calculated as a percentage of 400 weeks.

ability, even though the concerns we voiced in *Vogel* are inapplicable to such employees. We decline to embrace a result which reduces benefit awards to disabled employees any more than is necessary to preserve the rationality of the Workers' Compensation Act. *Cf. Vogel,* 937 S.W.2d at 861 (discussing the "remedial purpose of the [Workers' Compensation] Act"); *see also Ingram v. State Industries, Inc.,* 943 S.W.2d 381, 384 (Tenn.1995) ("[The Workers' Compensation Act] must be interpreted in a manner designed to protect workers and their families from the economic devastation that can follow on-the-job injuries."); *Betts v. Tom Wade Gin,* 810 S.W.2d 140, 142 (Tenn.1991) ("Tennessee's workers' compensation laws must be construed so as to ensure that injured employees are justly and appropriately reimbursed for debilitating injuries suffered in the course of service to the employer.").

We recognize that our solution does not settle the conflict between Tenn.Code Ann. § 50–6–207(3)(F) and Tenn.Code Ann. § 50–6–207(4)(A)(i). Benefit awards for permanent partial disability will reach a plateau at 65 percent disability, for under the current statutory scheme an employee who is over age 60 and is 65 percent disabled receives 260 weeks of benefits, the same award that an employee over age 60 would receive if totally disabled. Thus, any disability greater than 65 percent is rendered meaningless, a result plainly inconsistent with the Worker's Compensation Act's statement that compensation shall be paid "for the proportionate loss of use of the body as a whole resulting from the injury." Tenn.Code Ann. § 50–6–207(3)(F). However, we find that "capping" benefit awards for employees over age 60 at 260 weeks is the best solution available because it avoids the concerns raised in *Vogel* without incurring the added costs to disabled workers over age 60 that would result if benefits were based on 260 rather than 400 weeks. A complete resolution of the conflict seems impossible without redrafting the two statutes, a task

which must be accomplished by the legislature. Only by doing so will workers be compensated in proportion to their disability in keeping with the purpose underlying the workers' compensation system.

### B. Criteria of Tenn.Code Ann. § 50–6–242

Easy Trucking insists also that the trial court erred in awarding Peace 260 weeks of benefits pursuant to Tenn.Code Ann. § 50–6–242 (1999) rather than limiting benefits pursuant to the "multiplier" provision of Tenn.Code Ann. § 50–6–241 (1999). Tenn.Code Ann. § 50–6–241 provides in pertinent part:

> [I]n cases for injuries on or after August 1, 1992, where an injured employee is eligible to receive permanent partial disability benefits ... and the pre-injury employer does not return the employee to employment at a wage equal to or greater than the wage the employee was receiving at the time of the injury, the maximum permanent partial disability award that the employee may receive is six (6) times the medical impairment rating determined pursuant to the provisions of the American Medical Association Guides to the Evaluation of Permanent Impairment (American Medical Association), the Manual for Orthopedic Surgeons in Evaluating Permanent Physical Impairment (American Academy of Orthopedic Surgeons), or in cases not covered by either of these, an impairment rating by any appropriate method used and accepted by the medical community.

Tenn.Code Ann. § 50–6–241(b). Because Covino assigned Peace an impairment rating of 7 percent disability to the body as a whole, Peace's vocational disability rating would thus be limited to 42 percent (six times the 7 percent impairment rating) if the multiplier applies. However, Tenn. Code Ann. § 50–6–242 provides an exception to the multiplier provision:

Notwithstanding any provision of this chapter to the contrary, the trial judge may award employees permanent partial disability benefits, not to exceed four hundred (400) weeks, in appropriate cases where permanent medical impairment is found and the employee is eligible to receive the maximum disability award.... In such cases the court ... must make a specific documented finding, *supported by clear and convincing evidence,* of at least three (3) of the following four (4) items:

(1) The employee lacks a high school diploma or general equivalency diploma or the employee cannot read or write on a grade eight (8) level;

(2) The employee is fifty-five (55) years of age or older;

(3) The employee has no reasonably transferable job skills from prior vocational background and training; and

(4) The employee has no reasonable employment opportunities available locally considering the employee's permanent medical condition.

(Emphasis added).

■ In this case, it is undisputed that two of the requirements of Tenn.Code Ann. § 50–6–242 have been satisfied, because Peace is over age 55 and he has no high school education. However, while the trial court found that "this man has no reasonably-transferrable skills" and "[t]here's no reasonable job opportunities in this area for him," it did not specifically document what clear and convincing evidence it relied upon in deciding to award maximum benefits pursuant to Tenn.Code Ann. § 50–6–242. Therefore, the statute's requirements have not been met.

■ The decision whether the requirements of Tenn.Code Ann. § 50–6–242 are supported by clear and convincing evidence is to be made by the trial court, not by this Court. *Ingram v. State Industries, Inc.,* 943 S.W.2d 381, 383 (Tenn. 1995); *Middleton v. Allegheny Electric Co.,* 897 S.W.2d 695 (Tenn.1995). There-

fore, we remand the cause to the trial court so it may document the clear and convincing evidence supporting its conclusions that Peace has no reasonably transferrable skills and that there are no reasonable job opportunities available to him in the local area. *See Ingram,* 943 S.W.2d at 383.

## IV. Conclusion

For the foregoing reasons, we hold that benefits for permanent partial disability to the body as a whole for workers over the age of 60 should be calculated as a percentage of 400 weeks, "capped" at 260 weeks, rather than as a percentage of 260 weeks. Therefore, we affirm the trial court's decision on this issue. We further conclude, however, that the trial court erred because it failed to document clear and convincing evidence to support its decision that Peace was eligible for benefits in excess of the "multiplier" provision of Tenn.Code Ann. § 50–6–241(b). Accordingly, we remand the cause to the trial court so that it may determine and document whether the requirements of Tenn. Code Ann. § 50–6–242 have been met. Costs of this appeal are taxed to Easy Trucking Company.