**Roy L. LEAB**

v.

**S & H MINING COMPANY.**

Supreme Court of Tennessee,
at Knoxville.

June 3, 2002.

Benjamin C. Mullins and Imogene A. King, Knoxville, Tennessee, for the appellant, S & H Mining Company.

Bruce D. Fox, Clinton, Tennessee, for the appellee, Roy L. Leab.

## OPINION

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON and JANICE M. HOLDER, JJ., joined.

In this workers' compensation appeal, the employer raises several issues. Primarily, it contends that the trial court erred in awarding benefits pursuant to Tenn.Code Ann. § 50–6–242 (1999) rather than applying the "multiplier" provision of Tenn.Code Ann. § 50–6–241(b) (1999), which, if applied, would limit the plaintiff's award to six times his medical impairment rating. We hold that the evidence does not preponderate against the trial court's finding. Specifically, we hold that the requirements of Tenn.Code Ann. § 50–6–242(1) are satisfied whenever the employee *either* cannot read or write on an eighth-grade level *or* lacks a high school diploma or general equivalency diploma. We reject the contention that both elements must be satisfied to meet the statutory requirements. The employer also contends that the trial court failed to document the clear and convincing evidence supporting an award in excess of the mul-

tiplier provision, as required by *Peace v. Easy Trucking Co.*, 38 S.W.3d 526 (Tenn. 2001), and that it abused its discretion in commuting the benefit award to a lump sum because it did not make a finding that a lump sum award would be in the plaintiff's best interest. We hold that the trial court's judgment fails to document specific findings required for the resolution of both these issues, and we remand the cause so these omissions may be remedied.

## I. Facts and Procedural History

The employee, Roy L. Leab, was 53 years old at the time of trial. He had a limited education, having left school during the eighth grade, and his work history consisted entirely of manual labor. For approximately 33 years, he had worked at various jobs in the underground coal mining industry. In October 1997, Leab was employed by S & H Mining Company (S & H) as a roof bolt operator, a position which involves the insertion of bolts into the roof of a mine shaft in order to provide structural support. In performing this job, he was required to lift heavy bundles of metal plates. While lifting one of these bundles, he felt a sharp pain in his lower back. He reported the injury and eventually was treated by orthopedic surgeon Jean Francois Reat, M.D.

Reat examined Leab and ordered epidural steroid injections to alleviate his pain. Though the injections offered some relief, Leab continued to suffer from "mechanical low back pain." Consequently, in April 1999, Reat performed decompression and fusion surgery, in which a piece of bone was taken from Leab's left hip and inserted into his lower back. After the surgery, Leab's condition improved, though he continued to experience low back stiffness. He also suffered from intermittent left leg pain as a result of a bone graft taken from his hip.

In July 1999, Leab began to experience numbness in his extremities. Examinations revealed degenerative disk bulges in his cervical spine, as well as a peripheral polyneuropathy which affected the motor and sensory functions of his upper extremities. Reat concluded, however, that neither the polyneuropathy nor the degenerative condition of the cervical spine was work-related.

By March 2000, Leab had reached maximum medical improvement. Reat assigned him a 12 percent whole person anatomical impairment rating based on the symptoms causally related to the work injury. This impairment rating did not take into account the polyneuropathy or degenerative cervical disk condition. Reat further recommended that Leab not return to heavy manual labor; rather, he suggested that Leab refrain from activities involving regular bending, stooping, or lifting more than 20 pounds on an infrequent basis or 10 pounds frequently. Leab never returned to employment.

Leab sought workers' compensation benefits for his back injury, and a trial was conducted on July 14, 2000. At trial, S & H admitted that Leab had sustained a compensable injury and stated that the only issue before the trial court was the nature and extent of vocational disability. In addition to lay testimony, both sides presented testimony from vocational experts regarding this issue.

Leab offered the deposition of vocational consultant Rodney E. Caldwell, Ph.D. Caldwell testified that Leab scored at the eighth-grade level for reading and the sixth grade level for arithmetic on the Wide Range Achievement Test, which measures academic ability, and that he scored below the first percentile on the Minnesota Manual Dexterity Test. Caldwell opined that Leab would be eliminated from 50 to 52 percent of jobs in the local

market due to the lifting restrictions imposed because of his back injury, and he would be eliminated from 70 to 75 percent of available jobs when the restrictions were combined with the limitations on twisting or stooping. Caldwell further asserted that Leab's lack of manual dexterity, when combined with his other limitations, would exclude him from doing any work on a sustained basis. In offering this opinion, Caldwell noted that Leab suffered from a pre-existing arthritic condition which contributed to his lack of dexterity. On cross examination, he acknowledged that Leab's polyneuropathy, which arose after the compensable injury and was not work-related, also would affect dexterity.

S & H offered the testimony of vocational rehabilitation counselor Edward Smith, M.S. Smith testified that he had interviewed Leab, reviewed his medical records, and conducted a job search survey to identify available jobs in the local area. He did not, however, administer any tests to Leab. Smith testified that Leab would be capable of working in a light-duty capacity and that there were "hundreds of jobs within a 50 mile radius" available to a person with Leab's disabilities and education.

On July 26, 2000, the trial judge rendered his opinion telephonically, by way of a conference call to the attorneys for the parties.[1] A written Workers' Compensation Judgment, prepared and signed by the parties, was submitted to the trial court and was entered on October 16, 2000. The judgment recited the trial court's finding that Leab had sustained an 85 percent disability to the body as a whole as a result of his work-related injury. The judgment further declared that Leab (1) lacked a high school diploma or general equivalency diploma; (2) had no reasonably transferable job skills from pri-

or vocational background and training; and (3) had no reasonable employment opportunities available locally considering his permanent medical condition. Pursuant to Tenn.Code Ann. § 50–6–242 (1999), these findings were used to support an award of benefits in excess of the statutory "multiplier" provision of Tenn.Code Ann. § 50–6–241(b) (1999), which states that benefits for permanent partial disability to the body as a whole cannot exceed six times the employee's medical impairment rating in cases where the employee does not return to work. The judgment awarded benefits in a lump sum amount.

S & H appealed, and the Supreme Court Special Workers' Compensation Appeals Panel held that the trial court erred in granting benefits in excess of the multiplier provision because Leab failed to sufficiently fulfill the requirements of Tenn. Code Ann. § 50–6–242. The Panel therefore reduced the award. The commutation of benefits to a lump sum was affirmed.

■ We granted Leab's Motion for Review by the entire Supreme Court pursuant to Tenn.Code Ann. § 50–6–225(e)(5)(B) (1999). S & H raises three issues. Principally, it contends that Leab's benefits should have been limited to six times his medical impairment rating by the multiplier provision of Tenn.Code Ann. § 50–6–241(b). We hold that the evidence does not preponderate against the trial court's award of benefits in excess of the multiplier provision. Specifically, we conclude that the requirements of Tenn.Code Ann. § 50–6–242(1) are satisfied whenever the employee *either* cannot read or write on an eighth-grade level *or* lacks a high school diploma or general equivalency diploma; the statute does not require proof of both elements. S & H also contends that the trial court failed to document clear and

---

1. No transcript of that opinion has been pre-    served in the record on appeal.

convincing evidence to support an award in excess of the multiplier provision, as required by *Peace v. Easy Trucking Co.*,[2] and that it abused its discretion in awarding benefits in a lump sum because it did not find that a lump sum award would be in Leab's best interest. We agree that the judgment lacks the required findings needed for an award in excess of the multiplier or a lump sum award. Accordingly, we remand the cause so the trial court may remedy these omissions.

## II. Standard of Review

■ In workers' compensation cases, review of the trial court's findings of fact is de novo, accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. *See* Tenn.Code Ann. § 50–6–225(e)(2) (1999); *Spencer v. Towson Moving and Storage Inc.*, 922 S.W.2d 508, 509 (Tenn.1996). Where questions of law are involved, appellate review is de novo without a presumption of correctness. *Peace v. Easy Trucking Co.*, 38 S.W.3d 526, 528 (Tenn.2001).

■ Issues of statutory construction are questions of law to which the de novo standard with no presumption of correctness applies. *See Perry v. Sentry Insurance Co.*, 938 S.W.2d 404, 406 (Tenn.1996). When construing a statute, our goal is "to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn.1995). Our interpretation of the Workers' Compensation Act is guided by "a consideration which is always before us in workers' compensation cases that these laws should be rationally but liberally construed to promote and adhere to the Act's purposes of securing benefits to those workers who fall within

its coverage." *Lindsey v. Smith & Johnson, Inc.*, 601 S.W.2d 923, 926 (Tenn.1980).

## III. Analysis

### A. Requirements of Tenn.Code Ann. § 50–6–242

■ Both Tenn.Code Ann. § 50–6–241(b) (1999) and Tenn.Code Ann. § 50–6–242 (1999) apply to awards of permanent partial disability to the body as a whole. In a sense, Tenn.Code Ann. § 50–6–241(b) provides the "default rule" where an employee sustains a permanent partial disability to the body as a whole and does not return to work at a wage equal to or greater than the pre-injury wage. The statute states in pertinent part:

> [I]n cases ... where an injured employee is eligible to receive permanent partial disability benefits ... and the pre-injury employer does not return the employee to employment at a wage equal to or greater than the wage the employee was receiving at the time of injury, the maximum permanent partial disability award that the employee may receive is six (6) times the medical impairment rating determined pursuant to the provisions of the American Medical Association Guides to the Evaluation of Permanent Impairment ..., the Manual for Orthopedic Surgeons in Evaluating Permanent Physical Impairment ..., or in cases not covered by either of these, an impairment rating by any appropriate method used and accepted by the medical community.

Tenn.Code Ann. § 50–6–241(b). Thus, where this multiplier provision applies, benefits cannot exceed six times the employee's medical impairment rating.

Tenn.Code Ann. § 50–6–242, however, provides an exception to the multiplier

---

**2.** 38 S.W.3d 526 (Tenn.2001).

provision in certain cases. It states in pertinent part:

> Notwithstanding any provision of this chapter to the contrary, the trial judge may award employees permanent partial disability benefits, not to exceed four hundred (400) weeks, in appropriate cases where permanent medical impairment is found and the employee is eligible to receive the maximum disability award.... In such cases the court ... must make a specific documented finding, supported by clear and convincing evidence, of at least three (3) of the following four (4) items:
>
> (1) The employee lacks a high school diploma or general equivalency diploma or the employee cannot read or write on a grade eight (8) level;
>
> (2) The employee is fifty-five (55) years of age or older;
>
> (3) The employee has no reasonably transferable job skills from prior vocational background and training; and
>
> (4) The employee has no reasonable employment opportunities available locally considering the employee's permanent medical condition.

Tenn.Code Ann. § 50–6–242. Where three of the four subsections of this statute are satisfied, the trial court may award benefits in excess of the multiplier provision.

In this case, Leab has suffered a permanent partial disability to the body as a whole and has not returned to work. Reat assigned him an impairment rating of 12 percent. Thus, the multiplier provision will limit his recovery to a maximum of 72 percent unless he satisfies three of the four requirements of Tenn.Code Ann. § 50–6–242. It is undisputed that subsection (2) of the statute is not satisfied because Leab was less than 55 years old at the time of trial. The application of the remaining three subsections, therefore, is dispositive.

Primarily, S & H contends that subsection (1) is not satisfied. It acknowledges that Leab lacks a high school diploma or general equivalency diploma but emphasizes Caldwell's testimony that Leab is able to read on an eighth-grade level. In essence, it asserts that subsection (1) requires proof of inability to read on an eighth-grade level *and* lack of a diploma. We conclude that this contention is without merit.

The statute uses the word "or" to divide the element involving reading ability from the elements involving diplomas. It is generally accepted that "the word 'or,' as used in a statute, is a disjunctive article indicating that the various members of the sentence are to be taken separately." 73 Am.Jur.2d *Statutes* § 241 (1974). Thus, the clear implication of the statute is that the employee must satisfy *either* of its requirements—lack of a high school or general equivalency diploma *or* inability to read on an eighth-grade level.

■ We are unpersuaded by S & H's assertion, citing *Knoxville v. Gervin*, that the word "and" and the word "or" "are interchangeable in the construction of statutes when necessary to carry out the legislative intent." 169 Tenn. 532, 89 S.W.2d 348, 352 (1936).[3] While such an interpre-

---

**3.** Notably, S & H would have us hold that the word "or" should be read as "and" in this case, but apparently it would apply different statutory constructions under different facts. In cases such as this one, where the employee reads at an eighth-grade level, S & H contends that the legislature intended to use "and" instead of "or," so that the subsection is unsatisfied even if the employee lacks a diploma. On the other hand, in cases where the employee cannot read at an eighth-grade level, S & H apparently would contend that the legislature intended to use "or," for it asserts that proof of inability to read satisfies

tation may be necessary, in exceptional cases, to achieve a statute's intended purpose, applying such a reading to Tenn. Code Ann. § 50–6–242 would produce results contrary to those intended by the legislature. The objective of the statute is to allow greater benefits for injured workers who face especially limited opportunities in the job market. Certainly, employees without a diploma face limited job opportunities regardless of their ability to read, just as employees who cannot read face limited opportunities regardless of whether they possess a diploma. Consequently, the legislative purpose behind the statute is best served by an interpretation which requires proof of only one, not both, of the individual elements of subsection (1).

Moreover, the interpretation advocated by S & H would be inconsistent with this Court's decision in *Peace v. Easy Trucking Co.*, 38 S.W.3d 526 (Tenn.2001). In examining the requirements of Tenn.Code Ann. § 50–6–242 in *Peace*, we concluded that the employee had satisfied the requirements of subsection (1) because he lacked a high school diploma. *Id.* at 532. In so holding, we made no inquiry regarding the employee's ability to read at an eighth-grade level. *Id.* Implicit in our holding was the conclusion that the requirements of subsection (1) may be satisfied by proof of either one of its individual elements. Thus, we hold in this case, as we did in *Peace*, that subsection (1) has been satisfied by the proof that Leab lacks a diploma, regardless of his ability to read on an eighth-grade level.

S & H next contends that the trial court erred in finding that Leab satisfied subsection (3) of the statute, requiring

proof that he had "no reasonably transferable job skills from prior vocational background and training," and subsection (4), requiring proof that he had "no reasonable employment opportunities available locally considering [his] permanent medical condition." The trial court considered extensive evidence on both of these elements, including the testimony of Leab and the vocational experts offered by the parties. Although both elements were the subject of controversy at trial, we conclude that S & H has failed to demonstrate that the evidence preponderates against the trial court's findings. Accordingly, we affirm the trial court's conclusion that Leab is eligible to receive benefits pursuant to Tenn.Code Ann. § 50–6–242.

### B. Documentation of Clear and Convincing Evidence

S & H next asserts that the trial court erred in failing to document clear and convincing evidence to support its award of benefits. As this Court recognized in *Peace v. Easy Trucking Co.*, the Workers' Compensation Act requires the trial court to make a "specific documented finding, supported by clear and convincing evidence," before awarding benefits in excess of the multiplier provision. 38 S.W.3d 526, 532 (Tenn.2001) (quoting Tenn.Code Ann. § 50–6–242 (1999)). It is not sufficient for the trial court merely to recite in its order that the statutory requirements are satisfied; it must "specifically document what clear and convincing evidence it relied upon in deciding to award ... benefits pursuant to Tenn.Code Ann. § 50–6–242." *Id.* As pointed out by S & H, the

---

the subsection even if the employee possesses a diploma. We observe that the effect of such an analysis would be to render irrelevant the portion of the statute pertaining to diplomas, for cases would be decided on the basis of the employee's ability to read. In interpreting a

statute, we must avoid constructions which would render portions of the statute meaningless or superfluous. *Culbreath v. First State Bank Nat'l Ass'n*, 44 S.W.3d 518, 524 (Tenn. 2001).

trial court's judgment in this case does not specifically identify what evidence it relied upon in concluding that Leab had "no reasonably transferable job skills from prior background and training" and "no reasonable employment opportunities available locally considering [his] permanent medical condition." Therefore, it appears that the statutory requirements have not been met.

The decision whether clear and convincing evidence exists to support the requirements of Tenn.Code Ann. § 50–6–242 is most appropriately made by the trial court, not by this Court. *Id.; Ingram v. State Industries, Inc.,* 943 S.W.2d 381, 383 (Tenn.1995). Therefore, we remand the cause to the trial court so it may specifically document the clear and convincing evidence upon which it relied in finding that Leab has neither reasonably transferrable skills nor reasonable job opportunities available to him in the local area.

### C. Lump Sum Award of Benefits

Finally, S & H contends that the trial court erred in commuting Leab's award of benefits to a lump sum because the evidence does not show that a lump sum award was in Leab's best interest.

Under Tenn.Code Ann. § 50–6–229 (1999), the trial court must engage in a two-pronged analysis when considering whether to commute an award to a lump sum. The trial court must consider: (1) whether a lump sum award "will be in the best interest of the employee"; and (2) whether the employee has the ability "to wisely manage and control the commuted award irrespective of whether there exist special needs." Tenn.Code Ann. § 50–6–229(a). The trial court has broad discretion in deciding whether to commute an award to a lump sum, and we will not disturb that decision absent a showing that the trial abused that discretion. *Edmonds*

*v. Wilson County,* 9 S.W.3d 106, 109 (Tenn.1999).

Leab's counsel concedes that he introduced little evidence concerning whether a lump sum award would be in Leab's best interest. He asserts, however, that his failure to introduce evidence was a direct result of repeated conduct by S & H implying that it would agree to a lump sum award of benefits. At the opening of trial, S & H stipulated that the "only issue" was the extent of Leab's disability, despite a specific request in Leab's complaint that benefits be commuted to a lump sum. At the conclusion of the hearing, S & H's counsel volunteered in closing arguments that Leab could manage his funds and that there would be "no problem" with a lump sum award. Finally, counsel for S & H reviewed the proposed judgment order commuting benefits to a lump sum before it was submitted to the trial court, and the order was approved with no objection. Pointing to these circumstances, Leab contends that S & H has waived this issue on appeal.

This Court, however, has held under similar circumstances that the trial court's duty to ensure a lump sum award would be in the employee's best interest is mandatory and is not subject to the waiver doctrine. *See Duckworth v. Globe Bus. Furniture, Inc.,* 806 S.W.2d 526, 526–27 (Tenn. 1991). In *Duckworth,* as in this case, we recognized that the deficiencies in the proof offered by the employee "may well be attributable to the employer's apparent acquiescence in the award of a lump sum at the trial court level." *Id.* at 527. Though we noted that "[i]n the usual civil action, a party's failure to raise objection under circumstances such as those in this case would almost certainly be held to bar relief on appeal," we nonetheless concluded that appropriateness of a lump sum award is an issue "which must be ad-

dressed on the merits by the trial court." *Id.* at 526–27.

In this case, the trial court's judgment recites that Leab would be able to manage his funds, but the judgment is silent regarding whether a lump sum would be in Leab's best interest. Thus, the statutory prerequisites for commutation of the award have not been satisfied. Accordingly, on remand, we direct the trial court to make affirmative findings on the record regarding whether commutation of the benefit award to a lump sum would be in Leab's best interest.[4] If the trial court is of the opinion that additional evidence is essential to the proper determination of this issue, it shall be authorized to admit such evidence as it deems necessary.

## IV. Conclusion

For the foregoing reasons, we hold that the evidence does not preponderate against the trial court's decision to award benefits pursuant to Tenn.Code Ann. § 50–6–242 (1999) rather than applying the "multiplier" provision of Tenn.Code Ann. § 50–6–241(b) (1999) to limit Leab's awards to six times his medical impairment rating. We further conclude, however, that the trial court (1) failed to document the clear and convincing evidence supporting an award in excess of the multiplier provision, as required by *Peace v. Easy Trucking Co.*, 38 S.W.3d 526 (Tenn. 2001); and (2) did not find that commutation of the award of benefits to a lump sum would be in Leab's best interest, as required by Tenn.Code Ann. § 50–6–229 (1999). Accordingly, we remand the cause to the trial court for further proceedings to remedy the omissions outlined above. In order to avoid further delay in this case,

**4.** As in *Duckworth*, we feel it necessary to emphasize that "[i]n concluding that a remand is necessary, we do not wish to be seen as rewarding the employer's lack of diligence

this matter shall be addressed within 30 days of the issuance of this opinion.

Costs on appeal are taxed equally to the parties, for which execution may issue if necessary.

WILLIAM M. BARKER, J, not participating.

in this regard. Our concern, instead, is for the protection of the employee and his rights under the compensation statute." *Id.* at 527.