IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 3, 2022

## ANTHONY PERRY v. TENNESSEE DEPARTMENT OF CORRECTIONS

**Appeal from the Chancery Court for Davidson County**
**No. 20-1063-III      Ellen Hobbs Lyle, Chancellor**

_____

**No. M2022-00108-COA-R3-CV**

_____

An inmate convicted of first-degree murder in 1999 filed this declaratory judgment action challenging the Tennessee Department of Correction's calculation of his release eligibility date. The trial court granted the Tennessee Department of Correction's motion for summary judgment dismissing the petition. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right: Judgment of the Chancery Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and JEFFREY USMAN, JJ., joined.

Anthony Perry, Henning, Tennessee, Pro se.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Dean S. Atyia, Assistant Attorney General, for the appellee, Tennessee Department of Corrections.

## MEMORANDUM OPINION[1]

_____

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

# I. FACTUAL AND PROCEDURAL BACKGROUND

In April 1999, a jury convicted Petitioner/Appellant Anthony Perry ("Appellant") of first-degree murder for an offense committed August 12, 1995.[2] According to Appellant, the State of Tennessee sought the death penalty, but the jury chose instead to impose life imprisonment. Pursuant to Tennessee Code Annotated section 40-35-501(i)(1), Respondent/Appellee the Tennessee Department of Correction ("TDOC") calculated Appellant's sentence to require a minimum of fifty-one years imprisonment. Appellant first requested that TDOC issue a declaratory order altering this calculation, which TDOC denied.

On October 19, 2020, Appellant filed the petition for declaratory judgment that is subject to this appeal in Davidson County Chancery Court ("the trial court"). Therein, Appellant argued that TDOC miscalculated his release eligibility date under section 40-35-501(i)(1) because this section was inapplicable to a sentence imposed by a jury.

Eventually, on April 30, 2021, TDOC filed a motion for summary judgment, arguing that Appellant was not entitled to a declaratory judgment because his sentence was correctly calculated under section 40-35-501(i)(1). In support, TDOC filed a statement of undisputed material facts setting forth the following:

> 1. [Appellant] was convicted of first degree murder on April 12, 1999, and sentenced to a life sentence in Shelby County Case No. 96063 87.
> 2. [Appellant] was issued 1,263 days of pretrial jail credits and 39 days of time served on the sentencing order.
> 3. [Appellant] has earned 2,957 days of sentence reduction credits, but only retained 2,951 of those days because his sentence cannot be reduced below 51 years.

(Record citations omitted). Appellant later responded that these facts were undisputed. Appellant disagreed, however, that TDOC was entitled to summary judgment.

On September 8, 2021, the trial court entered a memorandum and order granting TDOC's motion for summary judgment. Therein, the trial court concluded that TDOC correctly calculated Appellant's release eligibility date under section 40-35-501(i)(1) because while the sentence may be chosen by the jury, it is ultimately "imposed" by the court. Although Appellant filed a motion to alter or amend,[3] the trial court denied that

---

[2] Appellant was also convicted of especially aggravated kidnapping and conspiracy to commit felony murder. The conspiracy charge was reversed on appeal, but the murder and kidnapping convictions were affirmed. *See generally* **State v. Perry**, No. W1999-01370-CCA-R3-CD, 2001 WL 792627 (Tenn. Crim. App. July 13, 2001).

[3] Appellant's motion was filed on October 12, 2021, which is in excess of thirty days following the

motion by order of January 4, 2022. Appellant thereafter appealed to this Court.[4]

## II. ISSUE PRESENTED

As we perceive it, Appellant raises a single issue in this appeal: whether the trial court erred in granting TDOC's motion for summary judgment related to the calculation of his sentence.

## III. STANDARD OF REVIEW

A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. This case focuses on the construction and interpretation of statutes, which is an issue of law. *Lavin v. Jordon*, 16 S.W.3d 362, 364 (Tenn. 2000). Issues of law are amenable to resolution by summary judgment. *Est. of Brown*, 402 S.W.3d 193, 197 (Tenn. 2013) ("Summary judgments are appropriate in virtually any civil case that can be resolved solely on issues of law." (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012))).

This Court reviews the trial court's ruling on a motion for summary judgment *de novo* with no presumption of correctness, as the resolution of the motion is a matter of law. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010)). We view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

## IV. DISCUSSION

As an initial matter, we note that Appellant is proceeding pro se in this appeal, as he did in the trial court. As such, we keep the following principles in mind in this appeal:

---

trial court's judgment. *See* Tenn. R. Civ. P. 59.04 ("A motion to alter or amend a judgment shall be filed and served within thirty (30) days after the entry of the judgment."). The certificate of service on the motion, however, indicates that it was mailed on October 5, 2021. Under the prison mailbox rule, we consider this to be timely. *See* Tenn. R. Civ. P. 5.06 (" If papers required or permitted to be filed pursuant to the rules of civil procedure are prepared by or on behalf of a pro se litigant incarcerated in a correctional facility and are not received by the clerk of the court until after the time fixed for filing, filing shall be timely if the papers were delivered to the appropriate individual at the correctional facility within the time fixed for filing.").

[4] During the pendency of this appeal, Appellant filed two requests for this Court to take judicial notice of certain authorities he asserted supported his position. This Court granted both motions only to the extent that it would consider the authorities properly cited in Appellant's briefs to this Court.

Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

The courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. Accordingly, we measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers.

Pro se litigants should not be permitted to shift the burden of the litigation to the courts or to their adversaries. They are, however, entitled to at least the same liberality of construction of their pleadings that Tenn. R. Civ. P. 7, 8.05, and 8.06 provide to other litigants. Even though the courts cannot create claims or defenses for pro se litigants where none exist, they should give effect to the substance, rather than the form or terminology, of a pro se litigant's papers.

*Hessmer v. Hessmer*, 138 S.W.3d 901, 903–04 (Tenn. Ct. App. 2003) (citation omitted).

Much of Appellant's argument on appeal surrounds the construction and application of statutes. We therefore apply the following "familiar rules of statutory construction":

Our role is to determine legislative intent and to effectuate legislative purpose. The text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose. When the language of the statute is clear and unambiguous, courts look no farther to ascertain its meaning. When necessary to resolve a statutory ambiguity or conflict, courts may consider matters beyond the statutory text, including public policy, historical facts relevant to the enactment of the statute, the background and purpose of the statute, and the entire statutory scheme. However, these non-codified external sources "cannot provide a basis for departing from clear codified statutory provisions."

*Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012) (citations omitted).

The crux of this appeal involves Tennessee Code Annotated section 40-35-501. Essentially, Appellant contends that his release eligibility date should be calculated under section 40-35-501(h)(1), while TDOC contends that Appellant's release eligibility should be calculated under section 40-35-501(i). As we must, we begin the language of the statute.

At the time of Appellant's offense, section 40-35-501(h)(1) provided as follows: Release eligibility for each defendant receiving a sentence of imprisonment for life for first degree murder shall occur after service of sixty percent (60%) of sixty (60) years less sentence credits earned and retained by the defendant, but in no event shall a defendant sentenced to imprisonment for life be eligible for parole until the defendant has served a minimum of twenty-five (25) full calendar years of the sentence[.] . . . A defendant receiving a sentence of imprisonment for life for first degree murder shall be entitled to earn and retain sentence credits, but the credits shall not operate to make the defendant eligible for release prior to the service of twenty-five (25) full calendar years.

Tenn. Code Ann. § 40-35-501(h)(1) (Supp. 1995). Under this subsection, Appellant asserts that he became entitled to release in 2020, having served the minimum twenty-five years in prison.

TDOC contends that Appellant's release eligibility date is not calculated under subsection(h)(1), but under the later-enacted subsection (i)(1). That subsection, enacted in 1995, provided as follows:

(1) There shall be no release eligibility for a person committing an offense, on or after July 1, 1995, that is enumerated in subdivision (2). Such person shall serve one hundred percent (100%) of the sentence imposed by the court, less sentence credits earned and retained. However, no sentence reduction credits authorized by § 41-21-236, or any other provision of law shall operate to reduce the sentence imposed by the court by more than fifteen percent (15%).
(2) The offenses to which the provisions of subpart (1) of this subsection apply are:
(A) Murder in the first degree[.][5]

Tenn. Code Ann. § 40-35-501(i) (Supp. 1995).

---

[5] In 2020, this statute was changed to repeal subsection (i)(2)(A). Instead, the statute now includes the following subsection that would apply to convictions of this type:

There shall be no release eligibility for a person committing first degree murder, on or after July 1, 1995, and receiving a sentence of imprisonment for life. The person shall serve one hundred percent (100%) of sixty (60) years less sentence credits earned and retained. However, no sentence reduction credits authorized by § 41-21-236 or any other law, shall operate to reduce the sentence imposed by the court by more than fifteen percent (15%).

Tenn. Code Ann. § 40-35-501(h)(2).

Because there is no dispute that Appellant was convicted of murder in the first degree and that this offense was committed after July 1, 1995, TDOC asserts that the release eligibility rules of subsection (i) are applicable, rather than the release eligibility rules in subsection (h). And under subsection (i)(1), Appellant is not eligible for release until he has served at least fifty-one years. Indeed, the Tennessee Supreme Court has explained the interplay of subsection (h) and (i) thusly:

> [F]irst-degree murders committed either before or after July 1, 1995, carry the same determinate sentence length of sixty years. However, for first-degree murders committed *on or after* July 1, 1995, a defendant must serve one hundred percent of sixty years less any sentence credits received, but the sentence credits cannot operate to reduce the sentence imposed by more than fifteen percent. Tenn. Code Ann. § 40-35-501(i). Fifteen percent of sixty years is nine years, thus resulting in service of a minimum fifty-one-years. As such, a defendant who commits a first-degree murder on or after July 1, 1995, may be released, at the earliest, after service of fifty-one years.

*Brown v. Jordan*, 563 S.W.3d 196, 200–01 (Tenn. 2018) (footnote omitted).

Appellant posits a novel argument, however. He contends that subsection (i) can only apply to a life sentence that is imposed by the trial court judge, rather than a jury, citing subsection (i)(1)'s multiple statements concerning the defendant's need to serve 100% of the "sentence imposed by the court." Tenn. Code Ann. § 40-35-501(i)(1). And because his life sentence was imposed by the jury when it rejected the District Attorney General's request for the death penalty, Appellant submits that subsection (i) is inapplicable to his conviction and calculation thereof must revert back to subsection (h).

We agree that the statutes surrounding sentencing in criminal cases are not a model of clarity. However, several considerations weigh against Appellant's interpretation. First, we note that we are required to interpret statutes "as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *Culbreath v. First Tenn. Bank Nat'l Ass'n*, 44 S.W.3d 518, 524 (Tenn. 2001) (quoting *Cafarelli v. Yancy*, 226 F.3d 492, 499 (6th Cir. 2000)); *see also Leab v. S & H Mining Co.*, 76 S.W.3d 344, 350 n.3 (Tenn. 2002) ("[W]e must avoid constructions which would render portions of the statute meaningless or superfluous."). In a similar vein, "it is improper to take a word or a few words from its context and, with them isolated, attempt to determine their meaning." *Steele v. Indus. Dev. Bd. of the Metro. Gov't of Nashville & Davidson Cnty.*, 950 S.W.2d 345, 348 (Tenn. 1997) (citing *First Nat'l Bank of Memphis v. McCanless*, 186 Tenn. 1, 207 S.W.2d 1007, 1009–10 (Tenn. 1948)).

While it is true that section 40-35-501(i)(1) references "sentence[s] imposed by the court[,]" the first line of the section states in broad terms that "[t]here shall be no release

eligibility for a person committing an offense, on or after July 1, 1995, that is enumerated in subdivision (2)." This language is clear and provides no exception for when the sentence is chosen by a jury rather than the trial court judge. To hold that only sentences imposed by the trial court judge fall within the ambit of subsection (h)(1) would be to ignore the broad and unequivocal language of subsection (i)(1) as a whole and to elevate a few words over the clear import of the provision as a whole.

We are also required to interpret statutes that relate to the same subject matter *in pari materia*, or in light of each other. *See **In re Kaliyah S.***, 455 S.W.3d 533, 552 (Tenn. 2015) ("Statutes that relate to the same subject matter or have a common purpose must be read *in pari materia* so as to give the intended effect to both."). As Appellant points out, Tennessee Code Annotated section 40-35-203(a) generally provides that it is the trial court's duty to "impose[] sentences in most cases; there are however, two exceptions: "as provided in subsection (c) and with respect to fines as provided in § 40-35-301[.]" Tenn. Code Ann. § 40-35-301(a) ("Except as provided in subsection (c) and with respect to fines as provided in § 40-35-301, sentences in felony and misdemeanor cases shall be imposed by the court."). Subsection (c), of course, concerns capital offenses. Importantly, however, the language of subsection (c) does not indicate that the jury "imposes" the sentence in a capital case; instead, the jury "fix[es]" the sentence: "If a capital offense is charged and the jury returns a verdict where death is a possibility, the jury shall *fix* the punishment in a separate sentencing hearing as otherwise provided by law, unless the jury is waived as to punishment." Tenn. Code Ann. § 40-35-301(c) (emphasis added). The same is true of Tennessee Code Annotated section 40-35-301, which, when referring to a fine in excess of $50.00, refers to the jury as fixing the fine, but the judge as imposing the fine and sentence. Tenn. Code Ann. § 40-35-301(b) ("In a case where the range of punishment includes a fine in excess of fifty dollars ($50.00), the jury finding the defendant guilty shall also *fix* the fine, if any, in excess of fifty dollars ($50.00). The jury shall report such fine with a verdict of guilty. When *imposing* sentence, after the sentencing hearing, the court *shall impose* a fine, if any, not to exceed the fine fixed by the jury.") (emphasis added).

The statute specifically governing first-degree murder likewise characterizes the jury's role as "fix[ing] the punishment:

> Upon a trial for first degree murder, should the jury find the defendant guilty of first degree murder, it shall not fix punishment as part of the verdict, but the jury shall fix the punishment in a separate sentencing hearing to determine whether the defendant shall be sentenced to death, to imprisonment for life without possibility of parole, or to imprisonment for life.

Tenn. Code Ann. § 39-13-204(a) (Supp. 1996) (emphasis added).[6] Thus, statutes on the

---

[6] This sentence appears to be identical to the current version of section 39-13-204.

same subject matter suggest that the duty of the jury is to "fix" the punishment, leaving the court with a duty to impose the sentence fixed by the jury.[7]

Moreover, Tennessee caselaw has previously held that the term "court" in criminal statutes may reasonably be interpreted as including both the judge and the jury. Specifically, the Tennessee Court of Criminal Appeals quoted an earlier Tennessee Supreme Court case that held that "the word 'court' as used in the statute, is not a designation of the presiding judge, but the term is used in a collective sense, indicating the tribunal before which the conviction should be had, and includes both court and jury." *State v. Purkey*, 689 S.W.2d 196, 200–01 (Tenn. Crim. App. 1984) (citing *State v. White*, 177 S.W. 478, 132 Tenn. 203, 206 (1915)); *see also State ex rel. Astor v. Schlitz Brewing Co.*, 104 Tenn. 715, 59 S.W. 1033, 1038 (Tenn. 1900) ("The term 'court,' however, was evidently not intended as a designation of the presiding judge in his distinctive functions, but, rather, as a collective word, indicating the tribunal before which the conviction should be had, and including both judge and jury."). Given the broad language of the first line of subsection (i)(1), these authorities suggest that the Tennessee General Assembly did not intend to exclude life sentences fixed by juries from the ambit of its new release eligibility rules.

Appellant's position also defies logic. Under his interpretation of section 40-35-501, a defendant who, following a jury trial, succeeds in defending against the District Attorney General's choice to seek the death penalty would be rewarded by a sooner release eligibility date than a defendant who pleaded guilty to the crime or against whom the District Attorney General chose not to seek the death penalty. Appellant offers no argument as to what logic would support such a distinction, nor can we discern any. "We must presume that the legislature did not intend an absurdity." *New v. Dumitrache*, 604 S.W.3d 1, 23 (Tenn. 2020) (brackets and citation omitted). We decline to frustrate the intent of the legislature that "[t]here shall be no release eligibility" for first-degree murders and other enumerated offences committed on or after July 1, 1995, Tenn. Code Ann. § 45-35-501(i)(1), by adopting such an "inharmonious, illogical, and absurd" distinction solely on the basis of whether the sentence was set by the jury or the trial court judge. *New*, 604 S.W.3d at 23. Simply put, regardless of the manner in which Appellant was convicted and sentenced, because he was convicted of first-degree murder for an offense that occurred after July 1, 1995, subsection (i)(1) is the appropriate statute for determining his release eligibility.

Appellant also raises the specter of another statute in his appellate brief: Tennessee Code Annotated section 39-13-204(e)(2). At the time of Appellant's offense and conviction, this statute provided as follows:

---

[7] Rule 32 of the Tennessee Rules of Criminal Procedure also confirms that regardless of the sentence imposed, the judge is an integral part of imposing the sentence, as the judge must sign the "judgment of conviction," which includes both the "adjudication and sentence." Tenn. R. Crim. P. 32(e). Thus, even if the term "court" in subsection (i)(1) were interpreted to mean only a sentence put in place by a judge, all sentences in Tennessee must be put in place by judges.

The trial judge shall provide the jury three (3) separate verdict forms, as specified by Tennessee Code Annotated, Sections 39-13-204(f)(1), 39-13-204(f)(2), and 39-13-204(g)(2)(B). The jury shall be instructed that a defendant who receives a sentence of imprisonment for life shall not be eligible for parole consideration until the defendant has served at least twenty-five (25) full calendar years of such sentence. The jury shall also be instructed that a defendant who receives a sentence of imprisonment for life without possibility of parole shall never be eligible for release on parole.

Tenn. Code Ann. § 39-13-204(e)(2) (Supp. 1996). Of course, as noted above, applying section 40-35-501(i)(1), Appellant is not eligible for release until he serves at least fifty-one years of incarceration.[8] Appellant therefore contends that the 1995 version of section 39-13-204(e)(2) creates a liberty interest that entitles him to calculation of his release eligibility under section 40-35-501(h)(1). Appellant further argues that section 39-13-204(e)(2) is specific and controls over the more general section 40-35-501(i)(1).

Respectfully, we cannot agree. For one, to the extent that Appellant asserts that section 40-35-501(i)(1) is less specific than, and should give way to, section 39-13-204(e)(2), we disagree. Here, the question at issue is solely related to TDOC's calculation of Appellant's release eligibility. The more specific statute to answer that question is clearly section 40-35-501(i)(1), as it provides explicit guidance as to how release eligibility is to be calculated for the offense of which Appellant was convicted.[9] Section 39-13-204(e)(2) merely states how a jury is to be instructed in a case involving a life sentence. Section 40-35-501(i)(1) therefore controls over the more general 39-13-204(e)(2). *See Graham v. Caples*, 325 S.W.3d 578 (Tenn. 2010) ("Where a conflict is presented between two statutes, a more specific statutory provision takes precedence over a more general provision.").

Moreover, Appellant provides no legal authority for his assertion that section 39-13-204(e)(2) creates a liberty interest such that TDOC must calculate Appellant's release eligibility via section 40-35-501(h)(1). In fact, he essentially provides no explanation of how a liberty interest was legally created by section 39-13-204(e)(2), much less how such an interest would result in that statute controlling over the more specific section 40-35-

---

[8] This statute was eventually changed, albeit over two decades later, to reflect this fact. *See* Tennessee Laws Pub. Ch. 528 (H.B. 511), eff. July 1, 2021 (deleting the second sentence of subsection (e)(2) and substituting the following: "If the defendant has been found guilty of first degree murder as described in § 39-13-202(c)(1), then the jury shall be instructed that a defendant who receives a sentence of imprisonment for life shall not be eligible for parole consideration until the defendant has served at least fifty-one (51) full calendar years of the sentence.").

[9] Appellant asserts that both sections 39-13-204(e) and 40-35-501(h)(1) are more specific than section 40-35-501(i)(1). Clearly, the cited subsections of 40-35-501 are equally specific, but simply deal with offenses committed during different time periods. *See Brown v. Jordan*, 563 S.W.3d at 200–01.

501(i)(1). "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." **Sneed v. Bd. of Pro. Resp. of Supreme Ct.**, 301 S.W.3d 603, 615 (Tenn. 2010). Any argument that this statute somehow requires that TDOC utilize section 40-35-501(h)(1) on the basis of due process is therefore waived.[10]

Finally, even if we were to assume that a harmful error could be shown in how the jury was instructed in his case,[11] Appellant has offered no argument or authority as to how such an alleged error can be corrected in a declaratory judgment action over twenty years after his conviction. As this Court recently explained: "This Court does not have jurisdiction in this declaratory judgment proceeding to alter the Criminal Court's judgment or make any determination concerning the illegality or validity of the Criminal Court's judgment." **Bond v. Tennessee Dep't of Correction**, No. M2019-02299-COA-R3-CV, 2021 WL 1200091, at *4 (Tenn. Ct. App. Mar. 30, 2021), *appeal dismissed* (Tenn. July 9, 2021) (citing **Sledge v. Tennessee Dep't of Correction**, No. M2016-01664-COA-R3-CV, 2017 WL 4331038, *2 (Tenn. Ct. App. Sept. 28, 2017) (determining that issues concerning the validity of a criminal court's judgment were not within the scope of this Court's review)). The sole issue in this case is whether TDOC is correctly calculating Appellant's sentence under section 40-35-501. We conclude that it is. As such, the trial court did not err in granting summary judgment in favor of TDOC.

## V. CONCLUSION

The judgment of the Davidson County Chancery Court is affirmed, and this cause is remanded to the trial court for further proceedings as may be necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellant, Anthony Perry, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

---

[10] In his reply brief, Appellant also raises substantive due process, Double Jeopardy, Equal Protection, and the Ex Post Facto clause. Other than a cursory mention of Equal Protection, Appellant did not mention these concepts in his initial brief. Generally, reply briefs are not vehicles for raising new issues. *See **Augustin v. Bradley Cty. Sheriff's Off.**, 598 S.W.3d 220, 227 (Tenn. Ct. App. 2019). Moreover, it takes more to invoke a sound constitutional argument than reciting provisions of the Constitution as talismans. We therefore will not tax the length of this Opinion by addressing these late raised and/or unsupported invocations. *See **Sneed**, 301 S.W.3d at 615.

[11] Certainly, Appellant's brief does not point to any place in the record where we can glean how the jury in his 1999 criminal trial was instructed.