**FILED**

**May 26, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 2:59 PM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| **GREGORY E. POPE,** ) | **Docket No.: 2015-01-0010** |
| **Employee,** ) | |
| **v.** ) | **State File Number: 65681-2014** |
| ) | |
| **NEBCO OF CLEVELAND, INC.** ) | **Judge Thomas Wyatt** |
| **D/B/A TOYOTA OF CLEVELAND,** ) | |
| **Employer,** ) | |
| ) | |
| **And,** ) | |
| ) | |
| **TENNESSEE AUTOMOTIVE** ) | |
| **ASSOCIATION SELF-INSURERS'** ) | |
| **TRUST,** ) | |
| **Carrier.** | |

---

## COMPENSATION HEARING ORDER FOR MEDICAL BENEFITS

---

This matter came before the undersigned workers' compensation judge on May 4, 2016, for a Compensation Hearing pursuant to Tennessee Code Annotated section 50-6-239 (2015). Gregory E. Pope, the employee, requested reimbursement of his charges for emergency and surgical treatment of a torn quadriceps tendon in his left knee sustained while participating in a charitable athletic event sponsored by his employer, Nebco of Cleveland, Inc., d/b/a Toyota of Cleveland (Toyota of Cleveland).[1] Toyota of Cleveland contended Mr. Pope is not entitled to workers' compensation benefits because he voluntarily participated in the activity precipitating his injury. The central legal issue in this claim is whether Tennessee Code Annotated section 50-6-110(a)(6) (2015) bars Mr. Pope's claim. For the reasons set forth below, the Court finds Mr. Pope is entitled to the requested benefits.

---

[1] Mr. Pope withdrew his claim for temporary disability benefits claim at the Expedited Hearing.

1

## History of Claim

Mr. Pope is a fifty-one-year-old resident of Bradley County, Tennessee, who, at the time of injury, worked as an automobile sales consultant for Toyota of Cleveland. (T. R. 1 at 1.) On August 16, 2014, Mr. Pope suffered a serious left-knee injury during his participation as a member of the Toyota of Cleveland team at the Chattanooga Mud Run, a charitable fundraiser for Habitat for Humanity of the Greater Chattanooga area.[2] (Ex. 6 at 1; Ex. 7 at 1.) His injury occurred as he abruptly stopped running in mud when a participant in front of him fell backward while trying to scale a wall. Mr. Pope experienced immediate pain that required his transport by ambulance for emergency care. Twelve days later, he underwent surgery to repair a tear in the quadriceps tendon in his left knee. (Ex. 1 at 88.)

Eddie Triplett, then general manager and operating partner for Toyota of Cleveland, instructed Mr. Pope to file a workers' compensation claim.[3] Mr. Pope did so, but on August 22, 2014, Toyota of Cleveland's carrier denied the claim, stating on the Notice of Denial that "[the] injury did not occur within the scope and course of employment. [The] incident occurred at a voluntary recreational event." (Ex. 9.) Mr. Pope received no workers' compensation benefits. The parties stipulated that Mr. Pope incurred $19,293.47 in medical bills to treat his injury. (Ex. 12 at 3.) Blue Cross Blue Shield of Tennessee, Mr. Pope's health carrier through Toyota of Cleveland, paid all but approximately $500 of his knee-surgery charges. The parties stipulated, if the Court finds the claim compensable, Toyota of Cleveland may apply the workers' compensation fee schedule to the stipulated charges. *Id.*[4]

On February 27, 2015, Mr. Pope filed a Petition for Benefit Determination. (T. R. 1.) The mediating specialist issued a Dispute Certification Notice on March 11, 2015, after mediation failed to resolve the parties' disputes (T. R. 2.) The Court entered an Initial Hearing Order on October 15, 2015 (T. R. 3), but did not hear the Compensation Hearing until May 4, 2016, because Mr. Pope was absent from the area for an extended period due to cancer treatment in New York.

Evidence at the hearing revealed Toyota of Cleveland and a Chattanooga Toyota dealership were the title sponsors of the 2014 Mud Run. (Ex. 6 at 1; Ex. 7 at 2.) The

---

[2] The parties stipulated that the cause of Mr. Pope's knee injury was the trauma sustained during the Mud Run. (Ex. 12 at 2.)

[3] Mr. Triplett conceded a lack of expertise on workers' compensation law and he instructed Mr. Pope to file a workers' compensation claim without consulting with counsel or the carrier.

[4] Counsel for Toyota of Cleveland offered the following description of the procedure for the payment of the stipulated charges, if compensable: The carrier will apply the fee schedule to the stipulated charges; it will pay the providers the charges per the fee schedule; and the providers will then reimburse Blue Cross the amounts it paid on the subject charges.

promotional literature issued for the event displayed the Toyota logo among those of several other sponsoring businesses. (Ex. 6 at 1.) One of the brochures prominently displayed the following message: "Thank you Capital Toyota and Toyota of Cleveland for being our Title Sponsor!" (Ex. 7 at 2.) Toyota of Cleveland manned a tent at the event at which it displayed vehicles. Signage at the event site advertised Toyota of Cleveland and the Toyota logo.

Mr. Triplett testified Toyota of Cleveland began sponsoring the Habitat for Humanity Mud Run "a couple of years" before 2014 as part of a corporate advertising strategy that encouraged Toyota dealerships to select and participate in "grass roots" charitable events. Mr. Triplett testified Toyota of Cleveland selected sponsorship of the Mud Run because Habitat for Humanity was a worthy cause and the dealership could become a "ground floor" sponsor for the then-new event.

Mr. Triplett stated Toyota of Cleveland benefitted from sponsorship of the Mud Run in several ways. The public would view the dealership as a good corporate citizen for supporting Habitat for Humanity; the television and radio advertising for the Mud Run identified Toyota of Cleveland as one of the title sponsors; the participation of Toyota of Cleveland's team would indicate to the spectators and other participants of the event that the dealership supported the event with its presence; and Toyota allowed the dealership to purchase for resale the vehicles Toyota's corporate advertising group displayed at the event site.

Mr. Triplett testified he requested that Dave Mason, then a sales consultant at Toyota of Cleveland, organize a five-man team composed of Toyota of Cleveland employees to participate in the 2014 Mud Run. Mr. Triplett committed to personally participate on the team. Mr. Triplett testified he did not require any employee to participate in the Mud Run, but understood the factor of "peer pressure" imposed by the fact he personally supported the Mud Run and would participate on the team.

Mr. Triplett testified he considered it beneficial for the dealership to field a team at the Mud Run and testified he would have been very disappointed if a participant backed out at the last minute. Mr. Triplett testified he might have told participants "I'm glad you're doing it" once they agreed to participate. Mr. Triplett testified he purchased Captain America shirts for the team to wear and met with the participants during work hours to hand out the shirts and request they wear the same color shorts so they would look like a team.[5]

Mr. Triplett authorized the participants in the Mud Run to drive a dealership car to the event site in Chattanooga. The event took place on Saturday morning, which was

---

[5] Nothing worn by the team identified the participants as Toyota of Cleveland employees.

during Mr. Pope's regular work hours as a sales consultant.[6] Mr. Triplett testified he used his influence as a representative of a title sponsor to obtain an earlier starting time for the Toyota of Cleveland team. He did so because he wanted to get the employees back to the dealership to sell cars.

On cross-examination, counsel for Mr. Pope questioned Mr. Triplett about his management style. Mr. Triplett testified he encouraged employees to take responsibility over and above their regular jobs and he rewarded those who did so.[7] He stated he valued teamwork as an important personal characteristic and considered an employee's extracurricular contributions to the dealership, as well as the employee's production, in evaluating the employee's performance. He testified Mr. Pope was a valued employee at Toyota of Cleveland. Mr. Mason and Mr. Pope testified they wanted to please Mr. Triplett in the performance of their jobs. Both Mr. Mason and Mr. Pope testified they considered Mr. Triplett a "father figure."

Mr. Mason asked Mr. Pope to participate on the Mud Run team because he worked out at Mr. Mason's gym and he knew Mr. Pope was in good shape. Mr. Pope initially declined because Saturday was the busiest day at the dealership and, thus, the best time to sell cars. Mr. Mason testified he asked Mr. Pope several times to participate because others he asked declined. Mr. Mason stated he probably "pressured" Mr. Pope to participate. However, he neither told Mr. Pope he was required to participate, nor threatened him with any adverse job impact if he did not participate. Mr. Mason testified he told Mr. Pope a day or so before the Mud Run that he was the "last choice" and "I need you to do it."

Mr. Pope testified he initially declined to participate in the Mud Run because, while he worked out for fitness, he was not so much interested in athletic competition because he did not want to get hurt. He testified, as a single parent, he needed to make a living and could not afford to get hurt. Mr. Pope testified Saturday morning was the peak time of the week to meet customers at the dealership and sell cars. He stated he did not want to miss the Saturday morning sales opportunities to participate in the Mud Run.

Mr. Pope testified Mr. Mason asked him three or four times to participate. He declined each time except the last, when Mr. Mason told him "someone bailed, you're on

---

[6] Mr. Pope testified he did not clock in for work before leaving the dealership to travel to the Mud Run. He stated Toyota of Cleveland employees are supposed to clock in "for insurance purposes," but he often forgot to do so and Toyota of Cleveland had not reprimanded him for failing to do so. Mr. Pope explained that Toyota of Cleveland's sales consultants earn income primarily by commissions from sales, although they receive a small draw against commissions to provide some income in the event they make no sales.

[7] Mr. Triplett described events such as the Mud Run, dealership-sponsored golf tournaments and a Breakfast Club, where sales consultants took breakfast to a local business, as examples of extracurricular activities sponsored by Toyota of Cleveland.

the list." Mr. Pope testified he felt he had to participate when Mr. Mason put it that way because he did not want to let Mr. Triplett down. Mr. Pope stated he did not believe Toyota of Cleveland would fire him or cause him trouble if he did not participate in the Mud Run, but he felt his failure to participate would "let Eddie down" and "shame" him in Mr. Triplett's eyes. Mr. Pope testified a Toyota of Cleveland employee participated in events like the Mud Run if he wanted to move up at the dealership. He stated he looked at the Mud Run as part of his job on that day and intended to finish the course so he could get back to the dealership to sell cars.

## Findings of Fact and Conclusions of Law

Pursuant to statutory mandate, the Court will not construe the Workers' Compensation Law remedially or liberally in favor of either party but shall construe it fairly, impartially and in accordance with basic principles of statutory construction. At this Compensation Hearing, Mr. Pope has the burden of proving all essential elements of his claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2015); *see Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

Tennessee Code Annotated section 50-6-110(a)(6) (2015) governs compensability of injuries incurred in employment-sponsored recreational activities. The Court notes Tennessee Code Annotated section 50-6-110(a)(6) (2015) provides that no compensation shall be allowed for an injury or death due to:

> The employee's voluntary participation in recreational, social, athletic or exercise activities, including, but not limited to, athletic events, competitions, parties, picnics, or exercise programs, whether or not the employer pays some or all of the costs of the activities unless:
> (A) Participation was expressly or impliedly required by the employer;
> (B) Participation produced a direct benefit to the employer beyond improvement in employee health and morale;
> (C) Participation was during employee's work hours and was part of the employee's work-related duties; or
> (D) The injury occurred due to an unsafe condition during voluntary participation using facilities designated by, furnished by or maintained by the employer on or off the employer's premises and the employer had actual knowledge of the unsafe condition and failed to curtail the activity or program or cure the unsafe condition.
> (b) If the employer defends on the ground that the injury arose in any or all of the ways stated in subsection (a), the burden of proof shall be on the employer to establish the defense.

5

The initial issue is one of statutory interpretation. Toyota of Cleveland contends it can defeat Mr. Pope's claim by establishing that any one of the factors listed in section 50-6-110(6) does not apply. Mr. Pope counters that the word "or" as placed in the statute means Toyota of Cleveland must show all four factors do not apply to his injury to defeat his claim.

Research reveals only one appellate decision citing section 50-6-110(a)(6) since its passage in 2009. In *Stacey v. Nissan N. Am., Inc.,* No. M2014-00796-SC-R3-WC, 2015 Tenn. LEXIS 916, at *19 (Tenn. Workers' Comp. Panel Oct. 15, 2015), an Appeals Panel of the Supreme Court held, in dicta, that section 50-6-110(a)(6) would operate to exclude benefits for an injury sustained while an employee used the employer's work-out center.[8] The Panel offered no guidance regarding the issue of statutory interpretation raised by the parties here.

Toyota of Cleveland contended the General Assembly intended a restrictive interpretation of section 50-6-110(a)(6) because it enacted section 50-6-110(a)(6) in response to the Supreme Court's decision in *Gooden v. Coors Tech. Ceramics Co.,* 236 S.W.3d 151 (Tenn. 2007), which loosened the earlier standard for recovery in recreational injury cases adopted in *Young v. Taylor-White, LLC,* 181 S.W.3d 324 (Tenn. 2005).

In *Young,* the Supreme Court held an injury suffered during a three-legged race at a company picnic was not compensable. The Court established the voluntary nature of the activity as the touchstone for determining whether the injury occurred during the course of employment. *Id.* at 329. In *Gooden,* the employee died from a heart attack suffered while playing basketball on the employer's premises during a scheduled work break. The Supreme Court reversed the trial court's denial of recovery because the employer did not require that the employee play basketball during break, holding "in determining whether an accident arose out of and in the course of employment, each case must be decided with respect to its own attendant circumstances and not by resort to some formula." *Id* at 155.

The Court finds nothing in *Young* and *Gooden* that specifically supports Toyota of Cleveland's argument that the General Assembly enacted section 50-6-110(6) in response to the developments brought about by the *Gooden* decision. The Court finds the mere fact the General Assembly enacted the statute two years after the Supreme Court's issuance of the *Gooden* opinion is insufficient reason to compel the restrictive

---

[8] The issue in *Stacey* was whether the employee' termination for an altercation while using the employee's work-out center entitled him to increased permanent partial disability benefits where he previously received a capped recovery due to a successful return to work. The Appeals Panel upheld the award of additional benefits, finding the employee's termination for the altercation at the work-out center was not work-related. The Panel in *Stacey* supported the finding with a comment that, had the employee suffered his initial injury at the work-out center, the court would have denied the compensability of the claim pursuant to section 50-6-101(6).

interpretation forwarded by Toyota of Cleveland.

The Court finds guidance on the interpretation issue raised by the parties in the Supreme Court's decision in *Leab v. S & H Mining Co.,* 76 S.W.3d 344, 349-50 (Tenn. 2002). In *Leab,* the Court addressed the language of Tennessee Code Annotated section 50-6-242(1) (2013) pertaining to factors allowing a court to award permanent disability benefits in excess of the then-existing cap on benefits. The employer urged that the statutory language "the employee lacks a high school diploma or general equivalency diploma or the employee cannot read or write on a grade 8 level" was inapplicable to an employee who did not have a diploma or GED, but could read at or above the grade 8 level. The Supreme Court rejected this position, holding "[i]t is generally accepted that 'the word 'or,' as used in a statute is a disjunctive article indicating that the various members of the sentence are to be taken separately." *Id.* at 349.

In view of the Supreme Court's interpretation of the word "or" in *Leab,* the Court finds that the interpretation advocated by Mr. Pope most aptly indicates the intention of the General Assembly in enacting section 50-6-110(a)(6).[9] After applying said application to the facts established at the Compensation Hearing, the Court finds Mr. Pope's injury is compensable because Toyota of Cleveland failed to establish that factors described in subparagraphs (A) and (C) did not apply to his injury.

Subsection (A) requires that participation in the activity during which Mr. Pope suffered injury be expressly or impliedly required. After Mr. Pope declined to participate in the Mud Run two or three times, Mr. Mason continued to pressure him to participate and eventually told him he "was on the list" because he was the "last choice." Taking into account the fact that dealership manager Mr. Triplett commissioned Mr. Mason to organize Toyota of Cleveland's Mud Run team and would himself participate on the team, the Court finds Mr. Pope's participation in the Mud Run was impliedly required.[10]

The Court likewise finds the factor outlined in subsection (C)—the fact the injury occurred during work hours and was part of the employee's work duties—applies to Mr. Pope's injury. The Court notes the Mud Run took place on a Saturday. Mr. Pope testified without contradiction he worked every Saturday because it is the peak day for

---

[9] 2009 Public Acts chapter 407, chapter 1 documents the text of what is now codified as section 50-6-110(a)(6) at the time the General Assembly enacted it and the Speakers of the Senate and House and the Governor signed it. The Court notes the text of section 50-6-110(a)(6), when enacted, contained the word "or" after the end of subparagraphs (A), (B) and (C). The Court finds that the text of the bill, as enacted, that eventually became codified as section 50-6-110(a)(6) supports the Court's interpretation here. A copy of 2009 Public Acts chapter 407, chapter 1 is attached to the order.

[10] In making this finding, the Court considered Mr. Triplett's very credible testimony that he instilled teamwork and loyalty in his employees and awarded those employees who participated in activities beyond one's assigned duties. The Court also considered Mr. Triplett's testimony that he understood the impact of "peer pressure" involved in the fact he personally supported and would participate on the Mud Run team.

selling vehicles. In support of its finding that, on the Saturday in question, Mr. Pope's work assignment was to participate in the Mud Run, the Court considered the fact that Mr. Triplett met with the Mud Run team during work hours a day or two before the Mud Run;to  hand out shirts and arrange for team members to meet at the dealership on the morning of the event and drive dealership vehicles to the event site.  Mr. Triplett admitted he used his clout as an event sponsor to obtain an earlier starting time for the Toyota of Cleveland team so he could get his employees back to the dealership "to sell cars."  Mr. Triplett testified he would have been very disappointed if a team member had dropped out at the last minute.  The Court finds, in view of the above, that, at the time of injury, Mr. Pope's job assignment was to participate in the Mud Run.

## *Medical benefits*

The parties stipulated the charges admitted into evidence constitute payment for reasonable and necessary treatment of the subject injury. (Ex. 12 at 3.)  The Court orders Toyota of Cleveland to pay the charges subject to the applicable fee schedule.   Because of its denial of the claim, Toyota of Cleveland has no basis to challenge Mr. Pope's selection of Dr. John Chrostowski to treat his knee.  The Court will require Toyota of Cleveland and its carrier to authorize Dr. John Chrostowski for future reasonable and necessary treatment of Mr. Pope's compensable left-knee injury.

## *Attorney's fees*

During the Compensation Hearing, counsel for Mr. Pope asked that the Court order that Toyota of Cleveland pay him an attorney's fee based on an hourly basis. Tennessee Code Annotated section 50-6-226 (2015) governs the award of an attorney's fee to counsel for the employee.  Section 50-6-226(a)(1) caps the fee of an employee's attorney at "twenty percent (20%) of the amount of the recovery or award" and provides that the fee is "to be paid by the party employing the attorney."   Section 50-6-226(a)(2)(A) mandates that "[m]edical costs that have been voluntarily paid by the employer or its insurer shall not be included in determining the award for purposes of calculating the [employee's] attorney's fee."

The Court commends Mr. Pope's counsel for zealously representing his client. The Court could see that counsel invested many hours in preparing Mr. Pope's case and noted the excellent and professional manner in which both counsel presented this challenging claim.  Nonetheless, the Workers' Compensation Law does not empower the Court to award Mr. Pope's counsel an attorney's fee based on an hourly rate; nor does the law authorize the Court to require Toyota of Cleveland or its carrier to pay Mr. Pope's attorney's fee.  In addition, because the medical records paid by Blue Cross were apparently paid voluntarily and in due course, Section 50-6-226(a)(2)(A) does not allow the Court to award counsel for Mr. Pope a fee based on the amounts the employer and its carrier will reimburse Blue Cross.  Accordingly, the Court awards counsel for Mr. Pope

an attorney's fee of twenty percent of the amount Toyota of Cleveland and/or its carrier must reimburse Mr. Pope for his out-of-pocket medical expenses.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Pope's claim for medical benefits is granted. Mr. Pope shall submit to Toyota of Cleveland and/or its carrier documentation of the charges incurred for treatment of his left-knee injury. Toyota of Cleveland and/or its carrier shall pay the charges pursuant to the applicable fee schedule.

2. Toyota of Cleveland and/or its carrier shall reimburse Mr. Pope for all out-of-pocket expenditures he made for treatment of his left-knee injury upon submission of proper documentation.

3. Mr. Pope shall receive lifetime future medical benefits pursuant to Tennessee Code Annotated section 50-6-204(b)(1) (2015) with Dr. John Chrostowski as authorized treating physician.

4. Mr. Pope's claim for temporary disability benefits is denied upon his withdrawal thereof.

5. The Court awards William J. Brown, counsel for Mr. Pope, an attorney's fee based on twenty percent of the out-of-pocket expenses incurred by Mr. Pope.

6. The Court taxes the costs of this cause, in the amount of $150.00, against Toyota of Cleveland and/or its carrier pursuant to Tennessee Compilation Rules and Regulations 0800-02-21-.07 (2015), to be paid within five days of this order becoming final.

**ENTERED this the 26th day of May, 2016.**

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

9

<u>Right to Appeal:</u>

Tennessee Law allows any party who disagrees with this Compensation Hearing Order to appeal the decision to the Tennessee Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal your case to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal."

2. File the completed form with the court clerk *within thirty calendar days* of the date the workers' compensation judge entered the compensation hearing order.

3. Serve a copy of the Compensation Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.

5. The party filing the notice of appeal, having the responsibility of ensuring a complete record on appeal, may request, from the court clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the court clerk within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal. Alternatively, the party filing the appeal may file a joint statement of the evidence within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the clerk of the Appeals Board. *See* Tenn. Comp. R. and Regs. 0800-02-22-.03 (2015).

6. After the workers' compensation judge approves the record and the court clerk transmits it to the Workers' Compensation Appeals Board, the appeal will be

10

docketed and assigned to an appeals board judge for review. At that time, a docketing notice shall be sent to the parties. Thereafter, the party who filed the notice of appeal shall have fifteen calendar days after the issuance of the docketing notice to submit a brief to the Appeals Board for consideration. Any opposing party shall have fifteen calendar days after the filing of the appellant's brief to file a brief in response. No reply briefs shall be filed. Briefs shall comply with the Practice and Procedure Guidelines of the Workers' Compensation Appeals Board. *See* Tenn. Comp. R. and Regs. 0800-02-22-.03(6) (2015).

To appeal your case directly to the Tennessee Supreme Court, the Compensation Order must be "final" (*see* Tennessee Code Annotated section 50-6-239(c)(7)) and you must comply with the Tennessee Rules of Appellate Procedure.

## APPENDIX

Exhibits:
1. Stipulated medical records, including bills and records from Memorial Hospital, American Anesthesiology of Tennessee, and Center for Sports Medicine;
2. Deposition of Gregory E. Pope;
3. Marked but not introduced;
4. Mr. Pope's discovery responses;
5. Internet information about the 2016 Chattanooga Mud Run;
6. Promotional information about the 2014 Chattanooga Mud Run;
7. Additional promotional information about the 2014 Chattanooga Mud Run;
8. Denial letter from Brentwood Services;
9. Notice of Denial of Claim for Compensation;
10. Marked but not introduced;
11. Toyota of Cleveland's discovery responses; and
12. Joint Compensation Hearing Statement.

Technical record:[11]
1. Petition for Benefit Determination, filed February 27, 2015;
2. Request for Initial Hearing, filed March 11, 2015;
3. Initial Hearing Order, filed October 15, 2015;
4. Post-Discovery Dispute Certification Notice, filed November 17, 2015;
5. Order of Continuance of Compensation Hearing, filed December 4, 2015; and
6. Order of Continuance of Compensation Hearing, filed March 8, 2016.

---

[11] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Compensation Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence. The Court noted additional issues in the DCN, but neither party introduced evidence regarding those issues.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Compensation Hearing Order was sent to the following recipients by the following methods of service on this the 26th day of May, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| William J. Brown, Attorney | | | X | wjb@vollaw.com |
| Jennifer Orr Locklin, Attorney | | | X | Jennifer.locklin@farrar-bates.com |

*Penny Shrum*

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

**STATE OF TENNESSEE**

**PUBLIC CHAPTER NO. 407**

**SENATE BILL NO. 1909**

**By Norris**

Substituted for: House Bill No. 1500

By Fitzhugh, Casada, Eldridge

AN ACT to amend Tennessee Code Annotated, Section 50-6-110, relative to workers' compensation.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:

SECTION 1. Tennessee Code Annotated, Section 50-6-110, is amended by deleting subsection (a) in its entirety and substituting instead the following:

(a) No compensation shall be allowed for an injury or death due to:

(1) The employee's willful misconduct;

(2) The employee's intentional self-inflicted injury;

(3) The employee's intoxication or illegal drug usage;

(4) The employee's willful failure or refusal to use a safety device;

(5) The employee's willful failure to perform a duty required by law;

(6) The employee's voluntary participation in recreational, social, athletic, or exercise activities (including, but not limited to, athletic events, competitions, parties, picnics, exercise programs) whether or not the employer pays some or all of the costs thereof unless:

(A) Participation was expressly or impliedly required by the employer; or

(B) Participation produced a direct benefit to the employer beyond improvement in employee health and morale; or

(C) Participation was during employee's work hours and was part of the employee's work-related duties; or

(D) The injury occurred due to an unsafe condition during voluntary participation using facilities designated by, furnished by or maintained by the employer on or off the employer's premises and the employer had actual knowledge of the unsafe condition

and failed to curtail the activity or program or cure the unsafe condition.

SECTION 2. This act shall take effect upon becoming law, the public welfare requiring it.

**PASSED:  May 26, 2009**

RON RAMSEY
SPEAKER OF THE SENATE

KENT WILLIAMS, SPEAKER
HOUSE OF REPRESENTATIVES

**APPROVED this 11th day of June 2009**

PHIL BREDESEN, GOVERNOR